```
                    UNITED STATES DISTRICT COURT

                              FOR THE

                    WESTERN DISTRICT OF VIRGINIA

                         BIG STONE GAP DIVISION



* * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 2:16-CR-00003
                             * NOVEMBER 1, 2016  10:20 A.M.
            Plaintiff,       * COURT HEARING
                             * VOLUME I OF I
vs.                          *
                             *
JAMES MONROE COX,            * Before:
                             * HONORABLE MICHAEL F. URBANSKI
            Defendant.       * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * * * WESTERN DISTRICT OF VIRGINIA

APPEARANCES:

For the Plaintiff:      MARTHA SUZANNE KERNEY-QUILLEN, ESQUIRE
                        United States Attorney's Office
                        180 West Main Street, Suite B19
                        Abingdon, VA 24210




For the Defendant:      NANCY C. DICKENSON, ESQUIRE
                        Federal Public Defender's Office
                        201 Abingdon Place
                        Abingdon, VA 24211




Court Reporter:         Judy K. Webb, RPR
                        210 Franklin Road, S.W., Room 540
                        Roanoke, Virginia 24010
                        (540)857-5100 Ext. 5333

      Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

**EXHIBIT INDEX**

| GOVERNMENT'S EXHIBITS: | MARKED | RECEIVED |
|---|---|---|
| 1 | 16 | 16 |

1    (Court convened at 10:20 a.m.)
2         THE COURT:  Good morning.  This case has been set
3    down today before the Court for sentencing.
4         Is the United States ready to proceed?
5         MS. KERNEY-QUILLEN:  We are, Your Honor.
6         THE COURT:  Is the defendant ready to proceed?
7         MS. DICKENSON:  Your Honor, good morning.  Should I
8    speak to the Court from here?
9         THE COURT:  That's fine, wherever you want.
10        MS. DICKENSON:  Your Honor, my client advises this
11   morning that he does not recall the events that led to these
12   criminal charges.  He also indicates that he wishes to
13   withdraw his guilty plea that was entered before Judge Sargent
14   in Abingdon a few weeks ago.
15        By way of explanation, a representative of the
16   Federal Public Defender's Office met with Mr. Cox last week
17   and shared the presentence report with him.  I again reviewed
18   the presentence report with him this morning, and only this
19   morning did he indicate his desire to withdraw the guilty
20   plea.
21        Mr. Cox indicates that he does not remember entering
22   the guilty plea.  He indicated that he recalled signing a plea
23   agreement; however, there was no plea agreement in this case.
24   One was presented to him, but Mr. Cox did not sign a plea
25   agreement.

1         I share that information with the Court and suggest
2    that perhaps an additional evaluation of Mr. Cox by the
3    Federal Bureau of Prisons to determine his competency or
4    sanity may be appropriate at this time.
5         THE COURT:  Okay.  Thank you for that, Ms. Dickenson.
6         Let me ask you this:  Why do you think we should
7    order another evaluation?  I've read the evaluation that was
8    done this summer by the folks in Miami, where he was sent.
9    Tell me why you think another evaluation might be prudent
10   under 4241 and 4242 -- 4142 and -- well, I'll get it.  I can't
11   remember the numbers.  But why do you think another evaluation
12   would be prudent?
13        MS. DICKENSON:  Your Honor, I ask that on behalf of
14   Mr. Cox because he indicates a lack of recollection.
15        THE COURT:  4241 and 4242.  I'm sorry for misstating
16   the numbers.  Okay.  All right.
17        Mr. Cox, did you hear what your lawyer just said?
18        THE DEFENDANT:  I really don't understand lawyer
19   talk.
20        THE COURT:  You don't understand the lawyer talk.
21   Okay.  Now, as I understand it, in Abingdon you pled guilty to
22   all five counts of this indictment, for sending these
23   threatening letters.  Do you remember doing that?
24        THE DEFENDANT:  No, sir.
25        THE COURT:  Do you recall being in court, before

```
 1  Judge Sargent, in Abingdon, and having a proceeding like this?
 2         THE DEFENDANT:  No, sir.
 3         THE COURT:  Okay.  Do you remember going down to
 4  Miami, to the federal detention center, and being evaluated by
 5  a psychologist?
 6         THE DEFENDANT:  No, sir.
 7         THE COURT:  You don't remember being sent down there
 8  this summer and talking to a bunch of doctors and being at a
 9  medical facility?
10         THE DEFENDANT:  No, sir.
11         THE COURT:  Okay.  Do you remember pleading guilty in
12  this case?
13         THE DEFENDANT:  No, sir.
14         THE COURT:  Okay.  You have told your lawyer that you
15  don't remember anything about this and that you don't want to
16  plead guilty; is that right?
17         THE DEFENDANT:  Yes, sir.
18         THE COURT:  You want to withdraw your guilty plea; is
19  that right?
20         THE DEFENDANT:  Yes, sir.
21         THE COURT:  Okay.  Have you talked with your lawyer
22  about being evaluated for your competency to stand trial and
23  for your sanity at the time of the offense?  Have you talked
24  with your lawyer about that?
25         THE DEFENDANT:  (No response.)
```

```
 1              THE COURT:  Ms. Dickenson, did you talk with him
 2   about that, or is that just your suggestion?
 3              MS. DICKENSON:  Your Honor, I did mention that to him
 4   earlier, that I would be requesting that on his behalf.  He
 5   did not request it himself.
 6              THE COURT:  All right.  Mr. Cox, do you understand
 7   that your lawyer has asked that I send you off for an
 8   evaluation, to see whether or not you are competent to stand
 9   trial and whether or not you suffered from a mental illness or
10   defect that would cause some concern with regard to your
11   sanity at the time of the offense?  Do you understand that?
12              THE DEFENDANT:  Yes, sir.
13              THE COURT:  Okay.  Now, do you have anything else you
14   would like to say to the Court?
15              THE DEFENDANT:  No, sir.
16              THE COURT:  Okay.  Does the government --
17              Thank you, Mr. Cox.  You may sit down, sir.  You may
18   sit down.
19              Does the government have any response?  And tell me
20   who you are.  I'm sorry, I don't believe we have met.
21              MS. KERNEY-QUILLEN:  Your Honor, we have not.  I'm
22   Suzanne Kerney-Quillen.  I'm a special assistant with the
23   office in Abingdon.
24              THE COURT:  Okay.
25              MS. KERNEY-QUILLEN:  And, your Honor, I certainly
```

1  understand Ms. Dickenson's position; however, our concern is
2  that Mr. Cox is continuing to attempt to manipulate this
3  Court.  He has attempted to manipulate the proceedings
4  throughout the pendency in that he has continued the criminal
5  activity.
6          He has tried to manipulate the jail system through
7  his behaviors at the jail to the extent that he has destroyed
8  property.  And he has also made statements to the jail that he
9  will not eat or drink until he is transferred to the Bureau of
10 Prisons.
11         So the United States has concerns that Mr. Cox is
12 simply attempting to continue to manipulate the system in an
13 effort to -- I'm not sure what his ultimate end goal is, but
14 we believe he is simply attempting to manipulate this Court
15 yet again.
16         THE COURT:  Thank you for that.
17         Would the federal public defender like to make any
18 further response?
19         MS. DICKENSON:  No, Your Honor.
20         THE COURT:  All right.  Let me hear from probation.
21         Mr. McMurray --
22         THE PROBATION OFFICER:  Yes.
23         THE COURT:  -- you have heard what has transpired
24 here in court this morning.  Do you have any recommendation
25 for the Court, sir?

1     THE PROBATION OFFICER: Your Honor, based on what was
2 stated in court, a mental health evaluation appears to be the
3 best course of action in probation's opinion.
4     THE COURT: Even though we just had a mental health
5 evaluation done in June, you think another mental health
6 evaluation is appropriate?
7     THE PROBATION OFFICER: Yes, sir, based on his
8 statements. I know he was found competent during the last
9 evaluation.
10    THE COURT: And Judge Sargent found him competent at
11 the time of the guilty plea hearing.
12    THE PROBATION OFFICER: Yes, sir.
13    THE COURT: Okay. All right. Thank you,
14 Mr. McMurray.
15    THE PROBATION OFFICER: Yes, sir.
16    THE COURT: Out of an abundance of caution, the Court
17 is going to allow the defendant to withdraw his plea of guilty
18 to these five counts, and I'm going to order an evaluation
19 under 4241 and 4242.
20    I'm going to order that he be sent to the Federal
21 Bureau of Prisons for an evaluation under 4241 and 4242. I'm
22 going to send him off for another evaluation, and then we will
23 come back and we will deal with the issue of competency once I
24 get that evaluation from the Bureau of Prisons.
25    Now, I understand and I appreciate the government's

Case 2:16-cr-00003-MFU-PMS   Document 89   Filed 03/29/17   Page 9 of 16   Pageid#: 311
9
U.S.A. v. Cox - 11/1/16

1  argument; I understand what the government is saying.  At the
2  same time, I'm going to, out of an abundance of caution, to
3  make sure that justice is being done in this case, let's just
4  get a second medical forensic evaluation to see if there are
5  some concerns about competency.
6          Obviously, based on what Mr. Cox has said this
7  morning and the various positions he has taken in court, I
8  have some concerns as regards his competency.  And so based on
9  that, and based on the request from counsel and the statements
10 that were made here in open court today by the defendant, I'm
11 going to order an evaluation under 4241 and 4242.
12         I'm also going to direct the Bureau of Prisons that
13 if he is not found to be competent, I don't want him returned
14 to this district; I want him to remain in the custody of the
15 Bureau of Prisons.  If the BOP finds him not to be competent,
16 we will hold a competency hearing with Mr. Cox present by
17 video.
18         I don't want him to be transported around.  That's a
19 huge disruption in his life and a huge burden on the Marshals
20 Service.  I'm going to put in the order that if his evaluation
21 is determined that he is not competent, then I want him to
22 stay at the BOP. We will hold him wherever he is, Butner or
23 Devens or Miami.  Wherever they send him, we'll have him stay
24 there, we'll have another hearing with him appearing by video,
25 and then the Court will make a competency finding, and then at

1  that time, we'll decide what to do.

2          Any objections from the United States?

3          MS. KERNEY-QUILLEN:  Your Honor, if I may.  I

4  understand the Court's ruling with regard to ordering another

5  psychological evaluation.  We certainly understand that, given

6  the statements that Mr. Cox has made this morning in court.

7  However, would the Court consider deferring your decision with

8  regards to allowing him to withdraw the plea of guilty until a

9  finding has been made to his competency?

10         THE COURT:  No.  What I want to do is send him off

11 for evaluation, and if he comes back and he is found to be

12 competent, I want to do another guilty plea hearing myself.  I

13 want to do that.

14         I didn't have the benefit -- I mean, he appeared

15 before Judge Sargent.  I have every confidence in Judge

16 Sargent and that she did the proper Rule 11 colloquy and she

17 made her findings.  But given what happened this morning,

18 since I'm the one obligated to impose any sentence in this

19 case, I want to hear from him myself.

20         I'm going to allow him to withdraw his guilty plea at

21 this time.  We'll send him off for a 4241 and 4242 evaluation

22 so that the speedy trial clock is tolled, and we will -- when

23 he comes back, we will see how he wants to plead and we'll go

24 from there.

25         Do you have any problem with that, Ms. Dickenson?

1      MS. DICKENSON:  No, Your Honor.  I think that is
2 appropriate.
3      THE COURT:  I do too.  Mental health issues are fluid
4 and we just don't know, and I want to make sure that we do
5 right by Mr. Cox and by our system of justice and by the
6 United States to make sure we're doing what is appropriate in
7 his case.  And I think a second opinion on an evaluation, all
8 things considered, given the nature of the charges, given what
9 happened in Abingdon, his guilty plea, given what has happened
10 today, given the issues that you have described,
11 Ms. Dickenson, with the FPD's office dealing with Mr. Cox,
12 given what I have heard today, given my review of the
13 presentence report, I believe -- and his long history of
14 criminality -- I mean, he has been, basically, in the criminal
15 justice system his whole life.
16      When he was released from the Bureau of Prisons after
17 his threats on the president, it was less than two weeks later
18 that he engaged in this bank robbery activity that led to the
19 state sentence where he is now.  So I think we need to all do
20 what we can to make sure that we're doing right by the
21 government, by Mr. Cox, and to protect the public, so I'm
22 going to do that.
23      MS. KERNEY-QUILLEN:  Thank you, Your Honor.
24      THE COURT:  Anything further from the government?
25      MS. KERNEY-QUILLEN:  No, Your Honor.

1          THE COURT: Anything further from you, Ms. Dickenson?

2          MS. DICKENSON: Yes, Your Honor.

3          Your Honor, I would ask that the Court recommend
4 designation to the facility in Miami where Mr. Cox was most
5 recently evaluated. I ask for this in particular because my
6 experience has been, Your Honor, that the various Bureau of
7 Prisons facilities do not share information.

8          THE COURT: Okay. I think that makes good sense.
9 Let's get the folks with the medical history, who have
10 evaluated him, let's send him back there.

11          Now, I don't intend to do this a third time. You
12 know, basically, this is belt and suspenders. We will get him
13 another evaluation and see what they say, and if the
14 evaluation comes back the same, we will proceed, okay, because
15 I do not want to be in a situation where he is simply gaming
16 the system.

17          But I'm going to give the benefit of the doubt right
18 now and out of an abundance of caution order a second
19 evaluation. I realize that's a cost and burden to the
20 government, but I believe that justice requires it in this
21 case, and that's what I will order. I will designate the
22 federal detention center in Miami where his last evaluation
23 was done.

24          MS. DICKENSON: Additionally, Your Honor, on behalf
25 of my client I do make the unusual request that the Court

1  direct that Mr. Cox not be given access to the mail while he
2  is incarcerated further, except for letters to counsel.  A
3  request was made to the magistrate judge and it was denied.  I
4  think it is in Mr. Cox's best interest that he not have access
5  to the United States mail.
6          THE COURT:  Tell me why.  Explain to me why you're
7  making that request.
8          MS. DICKENSON:  Your Honor, the government would
9  present evidence that since Mr. Cox entered his guilty plea in
10 Abingdon, Mr. Cox has mailed letters of what could be
11 perceived as a threatening nature.  We believe that Mr. Cox
12 would be best served by not having access to the United States
13 mail.
14         THE COURT:  You mean additional letters beyond the
15 ones set forth in the superseding indictment?
16         MS. DICKENSON:  Yes, Your Honor.
17         THE COURT:  Okay.  All right.  Were those ones that
18 came after he appeared before Judge Sargent?
19         MS. DICKENSON:  I believe there are some both before
20 and after, including letters to this Court.
21         THE COURT:  Okay.  All right, Ms. Dickenson.
22         What's the position of the United States on this?
23         MS. KERNEY-QUILLEN:  Your Honor, I understand
24 Ms. Dickenson's concern, and just for clarity of the record,
25 the letters that were directed to the courthouse were just to

1  the courthouse itself.  There were no letters addressed to
2  Your Honor.  I just wanted to make that clear for the record.
3          But Mr. Cox has submitted four -- excuse me, mailed
4  four letters since his plea of guilty, one in August, one in
5  September, and two in October.  So he has continued to write
6  these letters.  I know that that request had been made
7  previously, so I would not have an objection to it.
8          THE COURT:  Who are these letters directed towards?
9          MS. KERNEY-QUILLEN:  The first letter was to a
10 chemical company in Nashville, Tennessee; the second letter
11 was to Carilion Hospital here in Roanoke; the last two letters
12 were addressed to the Poff Building.  They were addressed
13 inside to judges and prosecutors, and that's what both of
14 those letters were addressed to.  The last two letters were
15 intercepted at the jail because they were covered in blood.
16 But I do have copies of those if Your Honor would like to see
17 those.
18         THE COURT:  Well, do you think those should be made
19 as exhibits?
20         MS. KERNEY-QUILLEN:  Your Honor, I would --
21         THE COURT:  We'll mark those as Exhibit 1,
22 Government's Exhibit 1 to this hearing.
23         Does the government join in the request that Mr. Cox
24 not be given access to the mail except to communicate with
25 counsel?

```
 1            MS. KERNEY-QUILLEN:  We would, Your Honor.
 2        (Government's Exhibit Number 1 was marked and received.)
 3            THE COURT:  Okay.  You know, this red you're saying
 4   is blood?
 5            MS. KERNEY-QUILLEN:  That's my understanding from the
 6   jail, Your Honor, those two are blood.
 7            THE COURT:  And these are copies, right?
 8            MS. KERNEY-QUILLEN:  Those are copies.  They
 9   destroyed the originals, Your Honor.
10            THE COURT:  We'll mark these as Government's Exhibit
11   1.
12            I'm going to grant Mr. Cox's motion, filed by the
13   federal public defender, that he not be given access to the
14   United States mail, except he may communicate by mail with his
15   counsel only.
16            MS. DICKENSON:  Thank you, Your Honor.
17            THE COURT:  Thank you, Ms. Dickenson.
18            Anything else from the government?
19            MS. KERNEY-QUILLEN:  No, Your Honor.
20            THE COURT:  Anything else from you, Ms. Dickenson?
21            MS. DICKENSON:  No, Your Honor.  Thank you.
22            THE COURT:  Mr. Cox, do you have anything you want to
23   say?
24            THE DEFENDANT:  No, sir, Your Honor.
25            THE COURT:  Well, listen, we're going to send you off
```

1  for further evaluation.  I wish you the very best of luck on

2  that evaluation.  I hope you do well.

3          Ask the marshal to declare a recess.

4       (Court recessed at 10:39 a.m.)

5

6                         CERTIFICATE

7  I,  Judy K. Webb, certify that the foregoing is a

8  correct transcript from the record of proceedings in

9  the above-entitled matter.

10

11  /s/  Judy K. Webb              Date:  3/29/2017