UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF VIRGINIA

BIG STONE GAP DIVISION


* * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 2:16-CR-00003
                             * FEBRUARY 9, 2017  11:17 A.M.
            Plaintiff,       * COMPETENCY, GUILTY PLEA &
                             * SENTENCING
vs.                          * VOLUME I OF I
                             *
JAMES MONROE COX,            * Before:
                             * HONORABLE MICHAEL F. URBANSKI
            Defendant.       * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * * * WESTERN DISTRICT OF VIRGINIA

APPEARANCES:

For the Plaintiff:      MARTHA SUZANNE KERNEY-QUILLEN, ESQUIRE
                        United States Attorney's Office
                        180 West Main Street, Suite B19
                        Abingdon, VA 24210




For the Defendant:      NANCY C. DICKENSON, ESQUIRE
                        Federal Public Defender's Office
                        201 Abingdon Place
                        Abingdon, VA 24211




Court Reporter:         Judy K. Webb, RPR
                        210 Franklin Road, S.W., Room 540
                        Roanoke, Virginia 24010
                        (540)857-5100 Ext. 5333

        Proceedings recorded by mechanical stenography,
transcript produced by computer.

        (Court convened at 10:20 a.m.)

U.S.A. v. Cox – 2/9/17

1          THE COURT:  Good morning.  Please call the case.

2          THE CLERK:  This is *United States of America v. James*

3  *Monroe Cox,* Action 2:16-CR-3, Defendant 1.

4          THE COURT:  All right.  Good morning, Counsel.  This

5  case has been set –- this case was set down for sentencing

6  some time ago, and there was a request made by counsel for an

7  additional psychiatric/psychological evaluation.  Mr. Cox was

8  sent off to Miami for an evaluation, and I received that

9  evaluation.

10          Has counsel received that evaluation as well?

11          MS. KERNEY-QUILLEN:  Yes, Your Honor.

12          MS. DICKENSON:  Yes, Your Honor, I have.

13          THE COURT:  The first thing we have to deal with this

14  morning is the issue of competency.

15          So is there any additional evidence that the United

16  States wishes to put on?

17          MS. KERNEY-QUILLEN:  Your Honor, if I might.

18          THE COURT:  Could you tell me who you are?

19          MS. KERNEY-QUILLEN:  Yes, sir.  I am Suzanne

20  Kerney-Quillen.  I'm a special assistant U.S. attorney from

21  the Abingdon, Virginia, office.

22          THE COURT:  I'm not sure I've met you, but nice to

23  meet you.

24          MS. KERNEY-QUILLEN:  Good to meet you as well, Your

25  Honor.

U.S.A. v. Cox – 2/9/17

1    Your Honor, we do not have any additional psychiatric

2  information to present outside of the psychological

3  evaluation.  However, I would like to advise the Court that

4  there was another incident with Mr. Cox over the weekend at

5  the Regional Jail, during which time Mr. Cox gained access to

6  a cordless phone.

7    Apparently, those are used to place commissary orders

8  at the jail.  And he had access to that phone, dismantled it,

9  ate the battery, and cut himself with some of the sharp

10  objects inside.  He was hospitalized for a number of days

11  following that.

12    But I understand that that behavior also occurred --

13  or similar behavior occurred while he was undergoing the

14  psychological evaluation.

15    THE COURT:  You know, I noted that in the report that

16  I received from the folks in Miami who indicated that, on page

17  5, he underwent multiple injury assessments and follow-up

18  appointments with health services after ingesting foreign

19  objects and self-inflicting lacerations.  That sounds like

20  consistent behavior.

21    MS. KERNEY-QUILLEN:  It is, Your Honor.  I did want

22  to make you aware that that behavior had continued.

23    THE COURT:  Thank you for that, Ms. Kerney-Quillen.

24    Ms. Dickenson, good morning.  Do you have any

25  evidence you wish to put on with regard to the issue of

1 competency?

2   MS. DICKENSON:  Good morning, Your Honor.  We do not

3 have any evidence to present regarding the competency matter.

4   Mr. Cox has just advised me that he wishes to proceed

5 today, after the determination of competency, to sentencing.

6 He would ask the Court to sentence him today.

7   THE COURT:  Okay.  All right.  All right.

8   Well, the Court has reviewed the competency

9 evaluation that was done with regard to Mr. Cox on -- that was

10 done at Judge Sargent's request on June 16th, 2016.  I

11 reviewed that one.

12   And then when we were here last time, there was an

13 additional request to send him off for an additional

14 evaluation.  And I got one dated January 31, 2017, which I

15 read, and it is very similar to the report that was from June.

16   It indicates on page 4 that his memory was grossly

17 intact for immediate, recent, and remote recall.  He had

18 obtained a total memory composite score in the average range

19 of functioning, because there was some issue at the first

20 sentencing hearing that he had memory issues.  The report

21 indicates on page 4, "No memory impairments were detected on

22 this measure."

23   They did note on page 4 that his intensity in range

24 of emotional expression was best described as labile.  His

25 mental status was consistent throughout the evaluation and not

1   suggestive of an active or genuine mental illness.

2          As I indicated before, he did have a problem when he

3   was at Miami with ingesting foreign objects and

4   self-inflicting lacerations.

5          He was sent out for a psychiatric evaluation by Jose

6   Gonzalez, chief psychiatrist, and Dr. Gonzalez described the

7   defendant's mental state as relatively unremarkable, and

8   reassigned diagnoses of borderline personality disorder,

9   impulse disorder, unspecified.  He was not prescribed any

10  medication.

11         The diagnoses done in Miami indicated his behaviors

12  are more accurately described by a personality disorder.

13         And on page 6, the report indicates that individuals

14  with borderline personality disorder tend to have a pattern of

15  undermining themselves and display a pattern of chronic

16  instability, which has been evident by Mr. Cox's deliberate

17  pattern of impulsive acting-out behavior throughout his

18  initial period of BOP confinement, subsequent imprisonment at

19  the Virginia DOC, and during his confinement throughout both

20  of his evaluations at this facility.  Such actions are

21  volitional in nature and not the product of a genuine mental

22  illness.

23         I note on page 6, under Treatment Recommendations,

24  the report says, "The defendant's behaviors are suggestive of

25  characterological dysfunction as the primary cause of his

1  affective and behavioral instability.  At the present time,

2  the BOP maintains a treatment program that provides treatment

3  for inmates with a principal diagnosis of borderline

4  personality disorder.  Mr. Cox may benefit from this program

5  to facilitate more effective coping mechanisms.  Of note,

6  these treatment recommendations have not changed since his

7  initial evaluation at this facility."

8        With regard to competency, the report indicates on

9  page 7 that Mr. Cox does not suffer from any active mental

10  illness or defect that would interfere with his trial

11  competency.

12        On Criminal Responsibility, on page 7, the report

13  indicates:  "A review of the defendant's actions regarding the

14  alleged offenses, to include the additional counts in the

15  superseding indictment, failed to reveal any disorganized or

16  bizarre behaviors that would potentially manifest from a

17  serious mental illness.

18        "As clearly stated in the initial evaluation by this

19  examiner, Mr. Cox was previously convicted of engaging in

20  similarly organized, goal-directed, and protracted behaviors.

21  Further, the defendant does not have a history of any serious

22  mental illness.

23        "Mr. Cox's actions imply a continual understanding of

24  the illegal nature of his alleged criminal conduct motivated

25  by possible intentions to receive improved treatment during

 1 | confinement and/or manipulate the conditions of his

 2 | confinement.

 3 |         "In summary" -- this is on page 8 -- "the defendant's

 4 | history, current medical state, and collateral information do

 5 | not suggest the presence of a severe mental illness that would

 6 | impair his ability to understand the nature and quality or the

 7 | wrongfulness of his actions.  Therefore, it is the examiner's

 8 | opinion that Mr. Cox was criminally responsible for his

 9 | behavior at the time of the alleged offenses."

10 |         So after review of this report and the earlier

11 | report, the Court finds that Mr. Cox is competent to proceed

12 | in this matter and that he was -- his mental state is such

13 | that he can be held criminally responsible for his conduct.

14 |         Any objection to the Court's ruling in regard to

15 | that?

16 |         MS. KERNEY-QUILLEN:  No, Your Honor.

17 |         THE COURT:  From the defense?

18 |         MS. DICKENSON:  No, Your Honor.

19 |         THE COURT:  Okay.

20 |         What I want to do now, Mr. Cox, if he would come

21 | forward, please, with his lawyer.  Come to the podium, please.

22 |         What I would like to do is just -- since there has

23 | been some passage of time, I want to make sure that he

24 | continues to want to plead guilty to the charges in the

25 | superseding indictment so that we can do it.

 1          So I'm going to run through a Rule 11 proceeding, and

 2   then if he continues to want to plead guilty to these charges,

 3   after hearing all that I'm going to tell him, then the Court

 4   will accept his guilty plea and we'll move to sentencing.

 5   Okay?

 6          MS. DICKENSON:  Thank you, Your Honor.

 7          THE COURT:  Ms. Kerney-Quillen, did you have

 8   something you wanted to say?

 9          MS. KERNEY-QUILLEN:  I did, Your Honor.  Just for the

10   record, at the last hearing Mr. Cox actually was permitted to

11   withdraw his guilty plea.

12          THE COURT:  He was?

13          MS. KERNEY-QUILLEN:  He was.  He was permitted to

14   withdraw that.  Your Honor advised that since you had not had

15   the opportunity to do a Rule 11 colloquy with him, since Judge

16   Sargent had done that previously, that you did permit him to

17   withdraw his guilty plea.

18          THE COURT:  Okay.  Well, I'm happy to have him enter

19   whatever plea he wants to enter this morning.  Okay?

20          MS. KERNEY-QUILLEN:  Thank you, Your Honor.

21          THE COURT:  Thank you, Ms. Kerney-Quillen.  I

22   appreciate that.

23          You know, that's yet another reason why I want to run

24   through a Rule 11 hearing this morning.

25          Ms. Dickenson, is it your understanding that Mr. Cox

1  wants to plead guilty to the charges in the superseding

2  indictment?

3          MS. DICKENSON:  Yes, Your Honor.

4          THE COURT:  Is that right, Mr. Cox?

5          THE DEFENDANT:  Yes, sir, Your Honor.

6          THE COURT:  Okay.  Now, Mr. Cox, before I can call

7  upon you to plead, I need to make sure that this is what you

8  want to do, okay?

9          THE DEFENDANT:  (Nods head up and down.)

10          THE COURT:  I need to go over the charges, I need to

11  go over the penalties, and I need to make sure you understand.

12  Okay?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  I'm going to ask you some questions, and

15  we're going to run through that.  The Court has already made a

16  finding of competence based on two psychiatric and

17  psychological evaluations.

18          But my point to you is this:  If you have any

19  questions you want to ask me, please ask me.  Okay?  If you

20  have any things you want to disagree with or statements you

21  want to disagree with, please let me know.  Okay?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  Now, let's go ahead and swear in

24  Mr. Cox, please.

25          THE CLERK:  Mr. Cox, raise your right hand.

U.S.A. v. Cox - 2/9/17

1          (Defendant is sworn.)

2          THE COURT:  Mr. Cox, you understand that you have to

3    tell the truth now that you've been sworn?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And if you testify falsely, that could

6    give rise to another charge for making false statements or

7    committing perjury.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Okay.  Tell me what your name is.

10          THE DEFENDANT:  James Monroe Cox.

11          THE COURT:  How old are you, Mr. Cox?

12          THE DEFENDANT:  37 years old.

13          THE COURT:  How far did you get in school?

14          THE DEFENDANT:  Eleventh grade.

15          THE COURT:  Eleventh grade.  Can you read and write?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Did you read the documents in this case?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  With Ms. Dickenson?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Did you read the superseding indictment?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  And do you understand what you're

24    charged with?

25          THE DEFENDANT:  Yes, sir.

U.S.A. v. Cox – 2/9/17

1          THE COURT:  These charges are making a bunch of

2    threats to judges and other people.  Do you understand that?

3          THE DEFENDANT:  Yes, sir.  Five -- five counts.

4          THE COURT:  Yes, five counts.

5          THE DEFENDANT:  Different felony.

6          THE COURT:  Different felony for each count; that's

7    right.

8          Now, you've obviously been down to the Bureau of

9    Prisons facility in Miami for two psychological evaluations,

10   correct?

11         THE DEFENDANT:  By Dr. -- Dr. Feldman.

12         THE COURT:  Dr. Feldman.  She saw you twice, right?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Okay.  Now, have you ever been treated

15   for any sort of addiction?

16         THE DEFENDANT:  For substance abuse?

17         THE COURT:  Yeah, substance abuse.

18         THE DEFENDANT:  I've been to a lot, a lot of

19   treatment.

20         THE COURT:  A lot of treatment.  And that's all

21   recounted in some detail in these evaluations that I have

22   read.  Okay?

23         THE DEFENDANT:  I've gone to, like, some substance

24   abuse at the treatment places; they've got, like, classes.

25         THE COURT:  How are you feeling this morning?

U.S.A. v. Cox – 2/9/17

1        THE DEFENDANT:  All right.  I'm all right.  I just

2   a --

3        THE COURT:  Okay.  Have you taken any substances

4   before coming over here today?

5        THE DEFENDANT:  Drugs?  No.

6        THE COURT:  Any drugs, any medicine at all?

7        THE DEFENDANT:  No, sir.

8        THE COURT:  But you're feeling okay?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  Okay.  Now, Counsel, based on these

11   evaluations, do you believe that Mr. Cox is competent?

12       MS. DICKENSON:  Yes, Your Honor, I believe that

13   Mr. Cox is competent.  Having said that, I do believe Mr. Cox

14   suffers from a mental illness.

15       THE COURT:  Right.  Well, he's been diagnosed with a

16   personality disorder.  And I think that's clear from -- that's

17   clear.  And I think one of the things the Court wants to do

18   is, when we get there, is take Dr. Feldman up on what she

19   said, and that is to recommend treatment at the Bureau of

20   Prisons, if we get there, for inmates with a principal

21   diagnosis of borderline personality disorder.  That needs to

22   be clearly stated --

23       MS. DICKENSON:  Thank you.

24       THE COURT:  -- because I think that's what Mr. Cox

25   needs.  And that's what Dr. Feldman says.  And we want to make

U.S.A. v. Cox - 2/9/17

1  sure he gets whatever treatment that will help him.

2          THE DEFENDANT:  (Raises hand.)

3          THE COURT:  Mr. Cox, did you want to say something?

4          THE DEFENDANT:  Yes, sir.  I was already on federal

5  probation.  I've been violated in the U.S. District in

6  Norfolk.  And I caught this new state crime, attempt a robbery

7  on a bank, or whatever.  They violated me and I went in front

8  of -- I forgot what judge I went in front of in 2009, but he

9  violated me and sentenced me to 23 months for the violation,

10  for violating -- because I was on federal probation when I did

11  this attempted robbery on the bank and all that.  Okay.

12          So he says, well, you got to do your state time

13  first.  After you're done doing your state time, then the 23

14  months you owe, you owe us in the Bureau of Prisons, you would

15  do the 23 months after you're done doing your state time.

16  Okay.  So I owe 23 months in the Bureau of Prisons.

17          But when he sentenced me for the violations, he said

18  I sentence you to 23 months in the Bureau of Prisons, but

19  after, after you do your state time.  But then he, at the end

20  of the sentence, he recommend that I get treatment, you know,

21  go to Butner, North Carolina, because Butner, North Carolina,

22  they've got treatment, drug, substance, you know, substance,

23  medications, or whatever.  They can, you know -- plus in this

24  evaluation right here, I think she kind of overlooked, because

25  I got, like, extensive mental history.  It goes back since I

1   was ten years old.  And I mean it goes really back.  It don't

2   just start with my incarceration, all this, you know, stuff I

3   be doing.

4        I've been diagnosed -- but as far as right now, she

5   finds me borderline personality.  But I've been diagnosed as,

6   you know -- I've been diagnosed a lot of things.  I mean, you

7   know, like -- I can't think right off.  I'm kind of

8   absent-minded right now.  I've been diagnosed with a lot of

9   things.  As far as right now, she diagnosed me as borderline

10  personality disorder.

11       THE COURT:  Right, she does.  And she recommends you

12  get treatment.  And it sounds to me like you agree with that,

13  that you want some treatment.

14       THE DEFENDANT:  Yes, sir, I need some kind of like

15  counseling, some kind of help.

16       THE COURT:  I'm going to do whatever I can to make

17  sure you get that once we get to that point of the hearing,

18  and I'll make sure that's very clear in my written order.

19  Okay?

20       THE DEFENDANT:  That's what the other judge, when he

21  violated me the 23 months, when he sentenced me to 23 months

22  in the U.S. District in Norfolk, he recommended that too,

23  because he looked at my history and stuff.  And I think it was

24  Mayberry or -- I forget his name, Mayberry.  But the judge

25  down there, he recommended the same thing after he sentenced

U.S.A. v. Cox - 2/9/17

1  me to the 23 months.  I still owe him that 23 months, because,

2  I mean, I was -- he said after you're done doing your state

3  time, then we'll come and get you for the 23 months, you know.

4            THE COURT:  Okay.

5            THE DEFENDANT:  And another thing is the probation --

6  I'm originally from Houston.  I'm originally from Houston,

7  Texas.

8            THE COURT:  Right.  I saw that.

9            THE DEFENDANT:  And really nowhere in Virginia do I

10  got -- when I do get out, I do get out of prison, nowhere do I

11  got a permanent residence here in Roanoke or Norfolk.  But all

12  my family, all my family is in Houston, the Houston area, in

13  Texas.

14            I would love to make, after I'm done doing my prison

15  sentence, my time, prison time, that there be a recommendation

16  that I get sent to a halfway house where I'm stabilization in

17  Houston, the Houston area or somewhere, anywhere in Texas, as

18  long as I'm back home where I'm born and raised.  Because

19  that's the recommendation I get, because all my family is

20  there, and maybe I can get ahold of my big brother or

21  somebody, closer ties to my family as far as communication.

22            And perhaps -- do they got -- I mean, I know they got

23  USP Beaumont, they've got USP Beaumont.  I mean, that's a high

24  security, but do they got any mental treatment places?

25            THE COURT:  You know, I don't know.  But what I will

U.S.A. v. Cox - 2/9/17

1  do, when we get to that point, is recommend to the Bureau of

2  Prisons -- you know, I can only recommend.  But I can

3  recommend to the Bureau of Prisons that you get this treatment

4  and that you be housed at a facility that is as close to your

5  home as possible, consistent with your security classification

6  and your mental health needs.

7       But we have a few things that we have to do before we

8  get to that, okay?

9       THE DEFENDANT:  Well, I'm just saying the last time,

10  they -- they made -- they did a recommendation last time,

11  because he was trying to send me to Butner, North Carolina,

12  but I wanted a recommendation -- I got sent closer to home.

13  At the time, the Bureau of Prisons only had Springfield,

14  Missouri, at the time.  But I heard they have a new treatment

15  place now in Texas.

16       THE COURT:  Well, I'm going to take all that into

17  consideration, and I appreciate you telling me that.

18       Now, Counsel, have you had a chance to go over the

19  charges in the superseding indictment with Mr. Cox?

20       MS. DICKENSON:  I have, Your Honor.

21       THE COURT:  And do you believe he understands what he

22  is charged with in these five counts?

23       MS. DICKENSON:  Yes, Your Honor.

24       THE COURT:  Mr. Cox, have you gone over the charges

25  in the superseding indictment?

U.S.A. v. Cox - 2/9/17

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  These five counts?

3          THE DEFENDANT:  Yes.  I'm willing to take

4    responsibility for all five letters.

5          THE COURT:  You wrote these letters threatening these

6    various judges and officials, didn't you?

7          THE DEFENDANT:  I'm lucky.  I wrote a lot more than

8    these.  I'm just lucky I got five counts because I wrote like

9    over a hundred of them.

10          THE COURT:  Okay.  But you certainly take

11    responsibility and admit you did these five?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  You understand that writing letters like

14    this violates federal law and that they're felonies, right?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Have you had a chance to talk with your

17    lawyer about these charges and understand what you're facing?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Have you talked with your lawyer about

20    the fact that you could go to jury trial if you want to, or

21    you can plead guilty?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  You understand you can plead not guilty

24    or guilty?

25          THE DEFENDANT:  Yes, sir, the serious of the nature

U.S.A. v. Cox - 2/9/17

1   and --

2           THE COURT:  Yes.  Have you gone over all that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  And has anybody forced you to plead

5   guilty to this?

6           THE DEFENDANT:  Oh, no, sir.  Nobody put a gun to my

7   head or nothing.

8           THE COURT:  Are you pleading guilty of your own free

9   will?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And pleading guilty because you are in

12  fact guilty of threatening these folks as set forth in these

13  five counts?

14          THE DEFENDANT:  Yes, sir, I'm guilty.  I'm caught

15  red-handed.  I did write these letters.

16          THE COURT:  All right.  Has anybody made you any side

17  deals or side promises in this case?

18          THE DEFENDANT:  Nobody has bribed -- nobody has

19  bribed me or nothing.

20          THE COURT:  All right.  And I appreciate your candor.

21          Now, you understand these are felonies, and as a

22  felon, you lose civil rights, including the right to vote,

23  serve on a jury, hold public office, or possess a firearm?  Do

24  you understand that?

25          THE DEFENDANT:  Yes, sir.

U.S.A. v. Cox - 2/9/17

1          THE COURT:  Okay.  You were born in the U.S.?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  You're a citizen?

4          THE DEFENDANT:  Um --

5          THE COURT:  You were born in the U.S.?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Born in Texas?

8          THE DEFENDANT:  Houston, downtown.

9          THE COURT:  Okay.  That counts.  You're a citizen.

10      Ms. Dickenson, would you like to have the indictment

11 read into the record, or do you believe, based on your many

12 communications with your client and going over the charges,

13 that he has a sufficient factual understanding that we can

14 waive its formal reading?

15          MS. DICKENSON:  Your Honor, I suggest that waiving

16 the superseding indictment is appropriate.  Mr. Cox has

17 reviewed the superseding indictment multiple times, and he is

18 familiar with it and understands the contents of the

19 indictment.

20          THE COURT:  Okay.  Thank you very much.

21      Counts One through Five of the superseding indictment

22 charge you with making various written threats to judges and

23 federal officials, threatening to injure them, and they were

24 delivered by the postal service.

25          There are three elements that the government must

1  prove in order to get a violation of the particular statute

2  involved.

3         One:  That you caused a communication to be delivered

4  by the postal service addressed to another person.  In other

5  words, you had to mail something.

6         Second:  That the communication contained a threat to

7  injure the person of the addressee or another.  In other

8  words, there's a threat.

9         And the third:  That you knowingly mailed the

10 threatening communication.

11        And in order to be subject to an enhanced penalty,

12 the government must also prove that the communication was

13 addressed to a federal judge, federal law enforcement officer,

14 or an individual covered by 18, United States Code,

15 Section 1114.

16        Do you understand that's what the government would

17 have to prove to get a conviction?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And you mailed these five letters?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  And these letters contained threats

22 against judges and other law enforcement officials, right?

23        THE DEFENDANT:  They had blood in them and stuff like

24 that.

25        THE COURT:  Yeah.  Yeah.  Okay.  Now, the maximum

U.S.A. v. Cox - 2/9/17

1  possible penalty provided by law for Counts One through Five

2  is a fine of up to $250,000 per count, a period of

3  incarceration of up to 10 years per count.  Do you understand

4  that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And then there's a period of supervised

7  release afterwards, after you get out of prison, of not more

8  than three years per count.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  There's also, for each count, there's a

11  $100 mandatory special assessment.

12         Have you gone over these penalties with your lawyer?

13         THE DEFENDANT:  Yes, sir, Your Honor.

14         THE COURT:  Have you talked about the sentencing

15  guidelines with your lawyer?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  What has happened is probation has

18  created a presentence report, we'll go over that in a minute,

19  in which they make some guidelines findings.  I will start

20  with the guidelines, and then I decide, based on the law, what

21  your sentence is going to be.  Do you understand that?

22         THE DEFENDANT:  Yes, sir, Your Honor.

23         THE COURT:  Now, there is no plea agreement in this

24  case.  You are pleading without a plea agreement, pleading

25  guilty, and there's no parole.  So if I sentence you to a

U.S.A. v. Cox - 2/9/17

1    period of incarceration, you will serve that entire term less

2    any good time that is awarded by the Bureau of Prisons

3    pursuant to a statute.  Do you understand that?

4              THE DEFENDANT:  Yes, sir, Your Honor.

5              THE COURT:  After you get out of prison, you'll still

6    have to be of good behavior.  You'll be on supervised release

7    for a period of time.  And if you get additional crimes or

8    threaten other people or cause any additional trouble or use

9    drugs or don't follow probation or have a gun, even though you

10   have completed your jail time, you can be brought back and put

11   in jail for an additional period of time for violating the

12   terms of your supervised release.  Do you understand that?

13             THE DEFENDANT:  So it's a mandatory probation?

14             THE COURT:  Yeah, it is.  After the period you're in

15   prison, it's a period of up to three years that I can sentence

16   you to, per count, for supervision, after you get out of

17   prison.  Do you understand that?

18             THE DEFENDANT:  No, no drugs, no --

19             THE COURT:  No drugs, no guns, no crimes, do what

20   probation tells you to do.  Do you understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Okay.  All right.  Now, let's talk about

23   what you're giving up by pleading guilty to this charge.

24   You're giving up your right to have a jury trial.

25             By pleading not guilty, you could have a jury trial,

U.S.A. v. Cox - 2/9/17

1  have 12 folks sit in that jury box and decide whether the

2  government has proved its case against you beyond a reasonable

3  doubt.  At that jury trial, you would have all the

4  constitutional rights associated with a jury trial, including

5  the right to counsel, the right to remain silent, the right to

6  see the government's witnesses and evidence, look at these

7  letters, you would have the right to -- and call witnesses on

8  your own behalf.

9         You would have the right to require the government to

10 prove its case against you by a unanimous jury verdict beyond

11 a reasonable doubt.

12        Do you understand you would have all of those rights

13 associated with a jury trial --

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  -- if you pled not guilty?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Okay.  But by pleading guilty, you give

18 up all those rights except the right to counsel.

19        And you understand there will be no trial?  Do you

20 understand that?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Okay.  Now, are you fully satisfied with

23 the advice and representation that your counsel,

24 Ms. Dickenson, has given you in this case?

25        THE DEFENDANT:  Yes, sir.

U.S.A. v. Cox - 2/9/17

1          THE COURT:  Okay.

2          THE DEFENDANT:  She's done the best she can, you

3     know, to represent me.  She gave me the best advice as she

4     could, I mean, to the best of her knowledge.

5          THE COURT:  All right.  Do you have any questions you

6     want to ask me before we continue?  Anything else?  And I will

7     certainly give you any chance you want to -- before I sentence

8     you in this case, I will give you any chance to say anything

9     again.  Anything you would like to say at this point?

10         THE DEFENDANT:  No, sir.  I just -- I just -- the

11    only repadation [phonetic] is, if I get sentenced to time, is

12    I get closer back home to Texas.

13         THE COURT:  Right.  I'm going to take care of that.

14         THE DEFENDANT:  Because if I get out on probation in

15    Roanoke or Norfolk, either one, I'm not going to have a

16    stabilization when I get out, as far as a halfway house, or

17    rebuilding back -- rehabilitating back into society,

18    basically, job-wise and getting back into the community thing

19    and all that.

20         THE COURT:  Okay.  I'm going to do what I can at the

21    end of the day to recommend that you be taken care of as close

22    to home as possible.  Okay?

23         THE DEFENDANT:  I've been locked up ten years

24    already, so I've been away from society since May, May 2007

25    already.  So it's going to take, when I get out -- by the time

U.S.A. v. Cox - 2/9/17

1  I get out of prison, it's going to take me a while to get

2  adjusted back to society, society, because I --

3          THE COURT:  And you understand you can't be writing

4  letters like this anymore?

5          THE DEFENDANT:  Yes, sir.  Because all this is doing

6  is jamming me up, giving me more and more and more time in

7  prison.  And when I get out, I would just like to get on with

8  my life and get a job and become a workaholic or something,

9  and just work until -- I guess work until I'm old.

10          THE COURT:  That would be good.  As long as you don't

11  write these letters, that would be good.  We want you to work

12  and do all that.

13          Now, let me ask the United States to present the

14  facts it would be prepared to prove were this case to go to

15  trial.

16          Come on up, and you can stand right up here,

17  Ms. Kerney-Quillen, and indicate what the facts would be if

18  this case were to go to trial.

19          And you listen carefully, Mr. Cox, because I'm going

20  to ask you if you disagree with anything she says.

21          Please go ahead.

22          MS. KERNEY-QUILLEN:  Yes, Your Honor.

23          In this case, the evidence would show that Mr. Cox

24  was incarcerated as an inmate at Red Onion Prison in Wise

25  County, Virginia, serving a sentence of six years and nine

U.S.A. v. Cox - 2/9/17

1    months for felony attempted robbery.

2           Mr. Cox's scheduled release date is January 30th,

3    2018.  From 2003 --

4           THE COURT:  Is he still in state custody now?

5           MS. KERNEY-QUILLEN:  He is.  He's on writ.

6           THE COURT:  Okay.  He has been writted out here from

7    Red Union, to come here for this hearing?

8           MS. KERNEY-QUILLEN:  Yes, Your Honor.

9           THE COURT:  I guess in the meantime he went to Miami

10   and back.

11          So you've been away from Red Onion for awhile?

12          THE DEFENDANT:  Eleven months.

13          THE COURT:  I understand.  Go ahead.

14          MS. KERNEY-QUILLEN:  From 2003 to October 26, 2015,

15   Mr. Cox mailed four threatening letters directed to federal

16   judges and prosecutors in Virginia, Missouri, and Texas.  A

17   2003 letter also contained threats directed to former

18   president George W. Bush.  Those threats were prosecuted in

19   federal court in 2003.

20          Mr. Cox's most recent letters in 2013, August 30th,

21   2013, were addressed to a federal district court judge in

22   Houston, Texas.  That threat contained threats -- that letter

23   contained threats to blow up the court building and kill

24   judges and prosecutors.  And that letter appeared to be

25   covered in blood.

1          In April 29th, 2015, Mr. Cox sent a letter addressed

2    to the Honorable Nanette Laughrey, United States Judge for the

3    United States District Court for the Western District of

4    Missouri.  In that letter, Mr. Cox made numerous threats to

5    rape and kill Judge Laughrey.

6          And then a third letter, addressed to the United

7    States District Court for the Eastern District of Virginia, on

8    October 22nd, 2015, contained threats from Mr. Cox in which he

9    stated he planned to kill, rape, sodomize judges and

10   prosecutors at that courthouse.

11         After Mr. Cox was indicted with regards to those

12   three letters, Mr. Cox wrote two additional letters that were

13   addressed to Judge James Jones, United States District Court

14   for the Western District of Virginia.  Those letters were

15   postmarked June 6th, 2016.  Both of the letters were

16   postmarked on that date.  Those letters contained threats to

17   kill Judge Jones.  The first letter also contained threats to

18   kill then presidential candidate Donald Trump.

19         Mr. Cox was interviewed by the FBI on November 10th,

20   2015.  Mr. Cox admitted at that time that he had written each

21   of those two subsequent letters, and he also admitted that he

22   intended to carry out the threats contained in those letters.

23         Mr. Cox also admitted that he put drops of his own

24   blood on the letters before placing them in the mail.  And he

25   stated that it felt good when he did that, and it was a

U.S.A. v. Cox - 2/9/17

1   fascinating and emotional release for him to do so.

2           In addition to admitting that he wrote each of the

3   letters, Mr. Cox said that he had homicidal feelings towards

4   each letter's recipients and that he meant what he wrote.

5           The two letters that were postmarked June 6th, 2016,

6   Mr. Cox was also interviewed with regards to those on June the

7   8th, 2016, and Mr. Cox admitted that he had written each of

8   those two subsequent letters containing the threats.

9           Mr. Cox again indicated that he meant what he said

10  with regards to the threats in those letters, and he advised

11  that he would kill Judge Jones and Donald Trump if he was

12  released from prison.

13          Mr. Cox further advised that he meditated about

14  killing family members and others, and that he felt like

15  keeping him in prison kept him from acting upon his thoughts

16  and from being a threat to society.

17          All the incidents that I've described did occur in

18  the Western District of Virginia, Your Honor.  And that's a

19  summary of the evidence that we would present.

20          THE COURT:  Ms. Dickenson, any dispute about the

21  facts just presented?

22          MS. DICKENSON:  No, Your Honor.

23          THE COURT:  Mr. Cox, you've just heard a summary of

24  the evidence against you in this case.  Anything that you

25  heard from counsel that you disagree with?

U.S.A. v. Cox - 2/9/17

1      THE DEFENDANT:  I mean, I just -- I mean, she was

2  right.  I threatened to kidnap some people and do all these

3  things.  I am, in fact, guilty of writing these letters.

4      I did tell the FBI agent behind me, I did tell him

5  when I was at Red Onion that I was going to follow through

6  with this when I got out of prison, these homicidal thoughts

7  or tendencies.  And so that Mr. Gray -- right?  Yeah,

8  Mr. Gray, I did admit to him that I was feeling this way, this

9  way, him -- and who was the other guy? -- another witness he

10  had with him there, another investigator that was with him.

11      THE COURT:  All right.  So you agree with what

12  Ms. Kerney-Quillen just went over --

13      THE DEFENDANT:  Yes, sir.

14      THE COURT:  -- that you wrote these letters and that

15  you, in fact, threatened these people as set forth in the

16  superseding indictment?

17      THE DEFENDANT:  And I wrote more.  I wrote a hundred

18  more letters.  In D.C., I threatened -- I wrote a lot of

19  letters in D.C.  The United States Supreme Court in D.C., I

20  wrote a lot of letters to judges --

21      THE COURT:  You know, you've got to stop writing

22  these kinds of letters, Mr. Cox; you know that.

23      THE DEFENDANT:  Because it's only --

24      THE COURT:  It just doesn't do you any good.

25      THE DEFENDANT:  They ain't never going to let me go

U.S.A. v. Cox - 2/9/17

1   if I --

2        THE COURT:  Right, if you keep writing these letters.

3   You need to stop writing these letters.

4        MS. DICKENSON:  May I have just a moment, Your Honor?

5        THE COURT:  Yes.

6      (Discussion off the record between Ms. Dickenson and the

7   defendant.)

8        THE COURT:  Mr. Cox, thank you.  Are you, in fact,

9   guilty of what is charged in the superseding indictment?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Pleading guilty of your own free will?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Counsel, based on your investigation of

14   the facts of this case, your communications with your client,

15   your discussions with him, do you believe his plea of guilty

16   to all five counts in the superseding indictment is well

17   advised, consistent with the facts, and in his best interest?

18        MS. DICKENSON:  I do, Your Honor, yes.

19        THE COURT:  As to Count One of the superseding

20   indictment, Mr. Cox, how do you plead?

21        THE DEFENDANT:  Guilty.

22        THE COURT:  As to Count Two, how do you plead?

23        THE DEFENDANT:  Guilty.

24        THE COURT:  As to Count Three, how do you plead?

25        THE DEFENDANT:  Guilty.

U.S.A. v. Cox - 2/9/17

1          THE COURT:  As to Count Four, how do you plead?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  And as to Count Five, how do you plead?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  Listen to the clerk while she reads you

6   the written guilty plea form.

7          Have you got one?

8          THE CLERK:  There is no written plea agreement.

9          THE COURT:  No, no, no.  But there is a written

10  guilty plea form that you need to read him and have him sign.

11         There is no plea agreement.

12         I could probably do it off the top of my head.

13         THE CLERK:  I will get it right now.

14         THE DEFENDANT:  Urbanski, Judge Urbanski, but you

15  didn't hear from the ones I wrote in D.C. and --

16         THE COURT:  No, no.  We're just dealing with these

17  five, Mr. Cox.  That's all we're dealing with.

18         THE DEFENDANT:  I mean, I did write a hundred more.

19         MS. DICKENSON:  And, Your Honor, I've advised my

20  client not to discuss --

21         THE DEFENDANT:  I mean --

22         MS. DICKENSON:  Wait just a minute, okay?

23         THE DEFENDANT:  Miss -- it's the truth.  I mean, I

24  did write a hundred more of these.

25         THE COURT:  I appreciate you saying that, and I'm

U.S.A. v. Cox — 2/9/17

1  here to deal with these five.

2          THE DEFENDANT:  Okay.

3          THE COURT:  Because that's what you've been charged

4  with.

5          Go ahead, Madame Clerk.

6          THE CLERK:  It states:  "In the presence of Nancy

7  Dickenson, my counsel, who has fully explained the charges

8  contained in the indictment against me, and having received a

9  copy of the indictment from the United States attorney before

10  being called upon to plead, I hereby plead guilty to said

11  indictment and Counts One through Five thereof.

12          I have been advised of the maximum punishment which

13  may be imposed by the Court for this offense.  My plea of

14  guilty is made knowingly and voluntarily and without threat of

15  any kind or without promises other than those disclosed here

16  in open court."

17          Let me print that.

18          MS. DICKENSON:  Your Honor, should I sign as a

19  witness?

20          THE COURT:  (No audible response.)

21          THE CLERK:  The form has been executed.

22          THE COURT:  All right.  Thank you.

23          It is the finding of the Court in the case of *United*

24  *States v. James Monroe Cox,* that the defendant is, pursuant to

25  the reports I have received and my discussions with him here

U.S.A. v. Cox - 2/9/17

1  this morning, fully competent and capable of entering an

2  informed plea.  He is aware of the nature of the charges and

3  the consequences of his plea.

4         His plea of guilty is knowing, voluntary, and

5  supported by an independent basis in fact as to each of the

6  essential elements of the offense.

7         I accept the plea and find him guilty -- the

8  defendant guilty of each count of the five-count superseding

9  indictment.

10        Now, so the next thing we need to do is to take up

11 the issue of sentencing.

12        I have reviewed the presentence report.  Has each

13 side had an opportunity to review the presentence report?

14        MS. KERNEY-QUILLEN:  Yes, Your Honor.

15        MS. DICKENSON:  Yes, Your Honor.

16        THE COURT:  Did you go over the presentence report

17 with Mr. Cox, Ms. Dickenson?

18        MS. DICKENSON:  Yes, Your Honor, I did.

19        THE COURT:  Okay.  Are there any objections to the

20 presentence report?

21        MS. DICKENSON:  No, Your Honor.

22        THE COURT:  Any from the government?

23        MS. KERNEY-QUILLEN:  No, Your Honor.

24        THE COURT:  All right.  Now, I accept the presentence

25 report as written.

1         As I indicated, the maximum possible penalty is a

2    fine of up to $250,000 per count, a period of incarceration of

3    ten years per count, and a period of supervised release of not

4    more than three years.  There's also a $100 mandatory special

5    assessment per count.

6         I want to go over the guidelines findings under the

7    sentencing guidelines.  Each one of these counts for mailing

8    threatening communications has the same guidelines.  But

9    because there are five separate counts for five different

10   communications, we have to employ a multiple-count adjustment

11   at the end.

12        But the guidelines for each one of them, Counts One,

13   Two, Three, Four, and Five, starts with a base offense level

14   of 18.  There is a two-point enhancement under 2B3.2(b)(1) for

15   an expressed or implied threat of death, bodily injury, or

16   kidnapping.

17        The base offense level is under 2B3.2(a).

18        There is a victim related adjustment under 3A1.2(a)

19   because the victim was either a government officer or

20   employee, former government officer or employee, member of the

21   immediate family of a person described in (a) or (b).  And the

22   offense of conviction was motivated by a status, so he gets

23   three more points for that.

24        So his adjusted offense level is 18, plus two, plus

25   three, or a 23.  Those are his adjusted offense levels for

U.S.A. v. Cox — 2/9/17

1    each one of these.

2           Because he has five of them, under 3D1.4 he gets a

3    four-point enhancement for that.  So his total offense --

4    total adjusted -- excuse me, his adjusted offense level is a

5    27.

6           Probation has recommended three points off for

7    acceptance of responsibility.  I believe that's appropriate.

8           Does the government disagree with that?

9           MS. KERNEY-QUILLEN:  No, Your Honor.

10          THE COURT:  So I find his total offense level to be a

11   24.

12          Any objection to that from the United States?

13          MS. KERNEY-QUILLEN:  No, Your Honor.

14          THE COURT:  Any objection to that from the defendant?

15          MS. DICKENSON:  No, Your Honor.

16          THE COURT:  The defendant has, since he has been a

17   young man, been involved in all kinds of criminal violations

18   in Texas, in Virginia more recently.  He has been involved in

19   all kinds of criminal violations, giving him a total criminal

20   history score of 11.  Two of them, while he was serving a

21   sentence in the VDOC, the Virginia Department of Corrections,

22   so he gets two more points for that.  A total criminal history

23   score of 13 puts him in a criminal history category of VI.

24          With a total offense level of a 24 and a criminal

25   history category of VI, that puts him in a guideline range of

U.S.A. v. Cox - 2/9/17

1  100 to 125 months.

2         Any objection to the Court's calculation of the

3  criminal history score or the guideline range from the

4  government?

5         MS. KERNEY-QUILLEN:  No, Your Honor.

6         THE COURT:  Any from the defendant?

7         MS. DICKENSON:  No, Your Honor.

8         THE COURT:  Having made that guideline finding, is

9  there any request for departure or variance from the United

10  States?

11         MS. KERNEY-QUILLEN:  No, Your Honor.

12         THE COURT:  Any request for departure or variance

13  from the defendant?

14         MS. DICKENSON:  Yes, Your Honor.  We would ask the

15  Court to consider that Mr. Cox has suffered from mental

16  illness most of his life, and we believe that Mr. Cox's

17  actions in this indictment -- in the incidents charged in the

18  superseding indictment are simply a cry for help.

19         Mr. Cox has not received appropriate treatment while

20  in custody in the Virginia Department of Corrections at Red

21  Union Prison, where he was housed in a solitary cell.

22         THE COURT:  Was he in segregation at Red Onion?

23         MS. DICKENSON:  Yes, he was, Your Honor.

24         THE COURT:  So he was locked down 23 hours and would

25  get out for his rec --

U.S.A. v. Cox – 2/9/17

1          MS. DICKENSON:  Yes, Your Honor.

2          THE COURT:  -- for an hour or so a day?

3          MS. DICKENSON:  Yes, Your Honor.

4          THE COURT:  What block were you housed in?

5          THE DEFENDANT:  C.  C Building.

6          THE COURT:  C Building, okay.

7          THE DEFENDANT:  The highest max in the state of

8   Virginia.

9          THE COURT:  Right.

10          Go ahead, Ms. Dickenson.

11          MS. DICKENSON:  And as the Court can observe by

12   Mr. Cox's demeanor, he very much is an attention seeker.  He

13   very much is asking for help, albeit in a negative fashion.  I

14   think anyone reading the letters would recognize that that is

15   the case, and they are not true threats, Your Honor.  The

16   words themselves are obnoxious, they are rude, they are

17   inappropriate, but they do not justify a true threat.  The

18   letters mailed from Red Onion, he had no ability whatsoever to

19   act on those threats while he was at Red Onion.

20          Given Mr. Cox's history, his particular

21   characteristics, Your Honor, the fact that he is 37 years old,

22   he still has one year left to serve on his Virginia sentence.

23   His release date from Red Onion is January 30th, 2018.

24          In addition to that, he --

25          THE COURT:  As he stands right now, is he getting

U.S.A. v. Cox - 2/9/17

1  credit for his state time?

2        MS. DICKENSON:  That is my understanding, Your Honor.

3  He is serving a primary state sentence.  He is in federal

4  custody on a writ, so my understanding is he is earning credit

5  towards his state sentence.  I checked today and the Virginia

6  Department of Corrections web site indicated, as recently as

7  this morning, that his release date is January 13th, 2018, so

8  that would indicate he has been receiving credit.

9        In addition, the Eastern District of Virginia

10 sentenced him to a 23-month federal sentence that he must

11 serve after completion of that.  So he's three years away from

12 beginning to serve any sentence that this Court would impose.

13        As the Court has indicated, Mr. Cox is in dire need

14 of mental health treatment, and we would ask, as the Court has

15 indicated that it would do, that the Court include that as a

16 part of its order.

17        In determining what the appropriate sentence is, Your

18 Honor, we understand that the advisory guideline range of 100

19 to 125 months is the Court's starting point.  We would ask the

20 Court to consider a sentence below 100 months.

21        THE COURT:  Okay.  So you want me to vary downwards?

22        MS. DICKENSON:  I do, Your Honor.  I do, Your Honor.

23 I should have made that plain.

24        THE COURT:  I just didn't know if it was a variance

25 or departure.  You want a variance, and I understand that.

U.S.A. v. Cox – 2/9/17

1   Thank you for that, Ms. Dickenson.

2         He has no ability to pay a fine.  There's no

3   restitution appropriate here.  I'm not going to impose a fine.

4   There's no forfeiture issue.

5         Do we have any statements from any victims that the

6   government intends to introduce in evidence?

7         MS. KERNEY-QUILLEN:  We do not, Your Honor.

8         THE COURT:  Does the government have any additional

9   evidence you wish to present?

10         MS. KERNEY-QUILLEN:  We don't have any evidence.  We

11   do have argument, Your Honor.

12         THE COURT:  Does the defendant have any evidence he

13   wants to put on, Ms. Dickenson?

14         MS. DICKENSON:  No, Your Honor.

15         THE COURT:  If y'all will go back to counsel table, I

16   will hear argument from the government, and then I will hear

17   argument from Ms. Dickenson, and then I will hear whatever it

18   is by way of allocution that Mr. Cox wants to tell me.

19         Yes, ma'am.

20         MS. KERNEY-QUILLEN:  Thank you, Your Honor.

21         In this case, the United States recommends a sentence

22   within the guidelines range of 100 to 125 months.

23   Specifically, Your Honor, the United States recommends a

24   sentence of 125 months.

25         Your Honor, we've not reached this recommendation

U.S.A. v. Cox - 2/9/17

1  lightly, but we've carefully considered the 3553(a) factors in

2  making our recommendation that we believe that this is an

3  appropriate sentence.

4        THE COURT:  The statutory maximum is 120 months.

5        MS. KERNEY-QUILLEN:  Excuse me.  120, yes, Your

6  Honor.

7        THE COURT:  Okay.

8        MS. KERNEY-QUILLEN:  So our recommendation --

9        THE COURT:  If the statutory max is 120, the only way

10  I could give him 125 within the guideline range would be to

11  run it concurrent.

12        Mr. McMurray?

13        THE PROBATION OFFICER:  Consecutively, Your Honor,

14  yes.

15        THE COURT:  I mean consecutively.  I would have to

16  run some of this consecutive, because for each count, the max

17  I can give him is 120.

18        THE PROBATION OFFICER:  Yes, Your Honor.

19        THE COURT:  So I could give him, if I wanted to, a

20  total of 50 years.

21        THE PROBATION OFFICER:  That's correct.

22        THE COURT:  By running them all consecutive.  But the

23  guideline range is only 100 to 125 [sic].

24        THE PROBATION OFFICER:  That's correct.

25        THE COURT:  Is to government asking me for 120 or

U.S.A. v. Cox - 2/9/17

1   125?

2        I take it by asking for 125, what you want is to run

3   part of this consecutive, so he gets a total sentence of 125

4   months, correct?

5        MS. KERNEY-QUILLEN:  That's correct, Your Honor.  We

6   are asking for the high end of the guidelines.

7        THE COURT:  I understand.  I wanted to make the point

8   that for each count, it's a statutory max of ten years.

9        MS. KERNEY-QUILLEN:  Yes, Your Honor.  And I

10  apologize if I misspoke.

11        THE COURT:  No, no, you didn't.

12        MS. KERNEY-QUILLEN:  We've reached that conclusion,

13  Your Honor, by considering the 3553(a) factors, specifically

14  the nature and circumstances and the seriousness of this

15  offense.

16        Mr. Cox has exhibited a pattern of serious

17  threatening behavior that has continued over an extended

18  period of time from 2013 to 2016.  He has previously engaged

19  in the exact same conduct.  In 2003, he sent letters

20  threatening to kill the president of the United States, George

21  W. Bush, for which he has since been convicted.

22        After Mr. Cox was first indicted on the three counts

23  in the original indictment, his behavior continued and he

24  wrote, that we have charged him with, two additional letters.

25  Mr. Cox has admitted here today that he wrote over a hundred

U.S.A. v. Cox — 2/9/17

1   threatening letters that he intended to carry through with.

2           We also consider Mr. Cox's criminal history.  We

3   believe that Mr. Cox exhibits a high risk of recidivism due to

4   his criminal history that is outlined on pages 9 through 16 of

5   the presentence report, in paragraphs 56 through 75.

6           He has numerous serious convictions, including

7   threats in 1997 at age 17; burglary in 1997 at age 18; and

8   again in 2000 at age 21; then the threats to the president

9   that was involved in 2003 at his age of 23.

10          Then within weeks of Mr. Cox being released from

11  incarceration and being placed on supervision, in 2009 his

12  supervision was revoked because he committed an attempted

13  robbery and used -- attempted to use a firearm in the

14  commission of that robbery.

15          Your Honor, we also believe that Mr. Cox has a risk

16  of recidivism because he continues to engage in threatening

17  conduct while he is incarcerated.  Besides the five letters

18  that he was charged with, besides the letters that he has

19  admitted that he wrote, we admitted exhibits during the last

20  hearing consisting of four new letters that were written in

21  August, September, and October of 2016 that contained threats

22  to various prosecutors and judges.  And some of these letters

23  were covered in blood, if Your Honor may recall.

24          Mr. Cox has simply demonstrated that he will not

25  abide by the law or the rules that are imposed upon him in or

U.S.A. v. Cox – 2/9/17

1   out of jail.

2          Mr. Cox presents a serious risk to the community in

3   that, again, when he was released from incarceration

4   previously, within weeks his behavior escalated and he

5   attempted a robbery.  He committed a very serious offense

6   within weeks of his release from incarceration.

7          Mr. Cox, in summary, has exhibited a pattern of

8   repeated increasingly more serious behavior from the ages of

9   17 to 37.

10          We do understand that Mr. Cox needs treatment.

11   Clearly from the psychological evaluations he does have that

12   need.  However, Mr. Cox understands and appreciates the nature

13   of what it is he is doing, by two examinations that have been

14   admitted in the Court.  Mr. Cox has been reviewed by over five

15   M.D. psychiatrists who have evaluated him and have found that

16   he understands what it is he is doing.

17          So Mr. Cox, while he may be crying for help, he

18   certainly needs help, and we certainly would request that the

19   Court order that he have treatment while he is incarcerated,

20   he simply cannot continue this behavior.  His behavior has

21   escalated, and he poses a very serious threat to the community

22   upon his release.

23          For those reasons, Your Honor, after reflecting upon

24   all the 3553(a) factors, the United States does believe that a

25   sentence at the high end of the guidelines of 125 months is

U.S.A. v. Cox - 2/9/17

1  appropriate and reflects the seriousness of the offenses, it

2  reflects his risk of recidivism, and it ensures the

3  community's safety, and it also promotes respect for the law

4  and provides just punishment in this case.

5           Thank you, Your Honor.

6           THE COURT:  Thank you, Ms. Kerney-Quillen.

7           Ms. Dickenson, what argument would you like to make

8  in addition to what you have already --

9           MS. DICKENSON:  Nothing further, Your Honor.

10          THE COURT:  Nothing further.  I think you've already

11  made your argument for a downward variance and I appreciate

12  that.

13          Mr. Cox, what else would you like to tell me that

14  might -- by allocution that might be helpful to the Court in

15  imposing an appropriate sentence?

16          THE DEFENDANT:  What was the question again, sir?

17          THE COURT:  Anything else you want to tell me, that

18  you want me to hear, anything at all related to this sentence?

19  What would you like to tell me?

20          THE DEFENDANT:  That, um, um, for, um, I (shrugs

21  shoulders).  Just -- can you hear me good?

22          THE COURT:  Yeah, I can hear you fine, sir.

23          THE DEFENDANT:  Okay.  I was making sure.  I mean, I

24  was getting close to it --

25          THE COURT:  No, I can hear you.

U.S.A. v. Cox – 2/9/17

1      THE DEFENDANT:  That, I mean, I am in fact guilty,

2  and when I wrote these letters, that's the way I felt.  I

3  did -- I did feel homicidal towards these judges and

4  prosecutors.  I did feel like killing people when I get out,

5  and that's, that's just the way I felt.  And I'm guilty for

6  writing these letters.

7      And I'm afraid of myself.  I'm really scared of

8  myself that I go out there to society and do these things and

9  murder these people.  I'm actually afraid that I might go out

10  there and follow through with these things and the Bush

11  family, them, and the rest of politics.

12      I mean, I do got issues.  I do sit in the cell and

13  think about killing people, getting out, shooting people,

14  sniping, sniping people.  I do premeditate on these things,

15  and I do got issues with this, just going through these

16  homicidal thoughts and tendencies.  I do -- I do have this

17  really, really inside, killing my family and stuff like that.

18  I really have these, these thoughts, urges to get out there

19  and follow through.

20      I mean, my counsel, she feels that I'm really not a

21  threat, but, I mean, I do mean -- I do mean what I wrote.

22  What I wrote in those letters, I do mean.  And when I get out,

23  I will, I will kill these people.  That's a promise; I will

24  get out and try to kill these people.  That's the honest,

25  that's the honest to God truth.  That's the way . . . (pause).

1   It's not over.  If I get out, it's not over.

2            THE COURT:  All right.  I hear you, Mr. Cox.

3            THE DEFENDANT:  And if I'm sentenced to 50 years, I

4   don't got nothing to lose, because, I mean, I'm going to die.

5   I'm going to die either way, so it's better I die in prison

6   than in society, I go out there and I kill a bunch of people.

7            And I think -- but I think I'm better off in prison

8   because, I mean, if I get out free, I'm afraid, really afraid

9   I'm going to follow through with these, these things and kill

10  these people if I get access, guns.

11           I'm not going to do no probation.  I have always

12  absconded from probation every time I got out of prison.  Even

13  last time I was on federal probation, when I got out of

14  federal prison, I wasn't even out of federal prison for like

15  two or three weeks and I got attempted robbery on a bank.  So,

16  I mean, I do follow through with these impulses and things and

17  I'm real, I'm real criminal mind -- I'm real criminal minded.

18           Yes, I need help.  But I can't help it I'm a bad guy.

19  I mean, I can't help that, I mean, that I have these homicidal

20  tendencies.  I mean, in these letters, I even made threats

21  towards my family.  I mean, I'm pretty sure the prosecutor has

22  got that, that I wrote, wrote threats just talking about when

23  I was going to get out, I was going to kill -- kill my family.

24  And I mean, I still, I still intend to do that, kill my

25  family, go back to Texas and kill them.

U.S.A. v. Cox - 2/9/17

1      I just need to be stopped.  I mean, the honest truth,

2  I need to be stopped.  I mean, I need some kind of help.

3  Because, I mean, I'm just -- I'm afraid of myself, Your Honor.

4  I mean, I really -- I really got some issues going on up here.

5  I think about going out there and just killing these people,

6  and then Lord knows the rest, I mean.

7      Maybe I'm better off in prison for the rest of my

8  life.  Really, I mean, I don't know, I mean I might be old

9  when I get out, I don't know, maybe I will calm down by the

10  time I get -- I get old -- get old and . . . (pause).  I'm not

11  saying an old man can't get out there and kill, kill people,

12  but I mean -- shoot people, but . . . (pause).

13      As far as I'm concerned, my life is -- my life is

14  over.  Either way, whether I go back in society or remain in

15  prison, it's pretty much, because of these issues I've got

16  going on in my head, I mean, I just can't, I can't help it.  I

17  need some kind of help, some kind of counseling or something,

18  just somebody I can talk to, these, these, these thoughts come

19  in my head, I could tell them, there's somebody that could

20  understand professionally, somebody that could understand

21  what's going through my mind, you know, I mean,

22  psychologically, I mean.

23      I'm still here, I mean.  I'm still -- I mean, I'm not

24  insane or nothing like that.  I'm still, I'm still here, I

25  just -- but inside, I do be going crazy sometimes inside, you

U.S.A. v. Cox - 2/9/17

1  know.  I'm sorry.  I'm sorry, Urbanski, I'm sorry.

2          THE COURT:  Well, Mr. Cox, thank you for that.  I

3  appreciate your candor and appreciate the statements that

4  you've made.

5          THE DEFENDANT:  I would rather be honest.  I would

6  rather be honest than y'all release me and I go out there and

7  I start killing people and shooting people.  And I would

8  rather be honest with you that I still plan on doing these

9  things when I get out, and I still plan on killing people when

10  I get out.  And it's -- my mind is already set what I'm going

11  to do when I get out, and kill a bunch of people

12  and . . . (pause).

13          THE COURT:  Well, I hear you, Mr. Cox, I hear what

14  you have had to say and the Court is going to impose the

15  following sentence in this case:

16          I am going to impose -- let me say this:  The

17  defendant is has engaged in criminal conduct in violation of

18  state law his entire life, including assault, burglary,

19  robbery, destruction of property, grand larceny, and attempted

20  bank robbery.

21          In 2003, he was convicted in federal court in the

22  Eastern District of Virginia of making threats to kill the

23  president and was sentenced to 51 months in the Bureau of

24  Prisons.

25          Roughly two weeks after his release from the Bureau

U.S.A. v. Cox - 2/9/17

1  of Prisons in 2007, he attempted to rob a bank, resulting in

2  the eight-year, nine-month state sentence he is presently

3  serving.  While in state prison, the defendant wrote a series

4  of very disturbing and graphic letters threatening various

5  courts and prosecutors.

6        Additionally, since his guilty plea in this case, he

7  has continued to issue similar written threats.  That's the

8  guilty plea done by the magistrate judge.

9        In June of 2016, he was forensically evaluated by the

10  Bureau of Prisons and found not to suffer from a mental

11  illness that interfered with his ability to appreciate the

12  nature or quality or wrongfulness of his actions.  An

13  additional evaluation ordered by this Court was performed in

14  January 2017, reaching the same conclusion.

15        Plainly, the defendant's history and the offense

16  conduct establish him as a danger to the community, and prior

17  periods of incarceration have not proved to be any deterrent

18  to his continued dangerous conduct, nor has he demonstrated

19  any remorse for his crimes.

20        He has indicated today, in very plain terms, that if

21  he is released from prison, he will go out and kill people.

22  And he has told me that he is just -- he is being very candid

23  with me when he says that.

24        I don't have any choice.  Given what I have heard in

25  allocution and given the nature of these crimes and given his

U.S.A. v. Cox – 2/9/17

1  extensive Category VI criminal history, the Court is going to

2  impose the statutory maximum sentences of 120 months, plus

3  three years of supervised release, to run consecutive, to

4  protect the public in this case.  120 months on each count,

5  three years of supervised release on each count, to run

6  consecutive in this case.

7       I believe that the protection of the public requires

8  that a consecutive sentence be imposed in this case,

9  particularly given the defendant's continued and repeated

10  assertions that if he's ever released from prison, he will go

11  out and kill a bunch of people.

12       I will recommend that he serve his sentence as close

13  to his home in Texas as possible, consistent with his

14  treatment needs and security classification.  I specifically

15  recommend to the Bureau of Prisons that he receive treatment

16  for inmates with a principal diagnosis of borderline

17  personality disorder.

18       And I'm going to -- can I order these terms of

19  supervised release to run consecutive?

20       THE PROBATION OFFICER:  Yes, sir.

21       THE COURT:  I'm going to order them to run

22  consecutive.

23       He is required, when released from the Bureau of

24  Prisons, to report to -- well, within 72 hours of release from

25  the custody of the Bureau of Prisons.

U.S.A. v. Cox - 2/9/17

1          The following mandatory conditions of supervision:
2    Cannot commit another federal, state, or local crime;
3          Cannot unlawfully possess a controlled substance;
4          Shall refrain from any unlawful use of a controlled
5    substance;
6          Shall submit to one drug test within 15 days of
7    release from imprisonment, and at least two periodic drug
8    tests thereafter;
9          Cannot possess, buy, sell, or use a controlled
10   substance;
11         Cannot possess a firearm, ammunition, destructive
12   device or dangerous weapon;
13         Shall cooperate in the collection of DNA as directed
14   by probation.
15         I'm going to require all the standard conditions of
16   supervision.  I'm going to require participation in a program
17   of mental health treatment until he satisfies all the
18   requirements of the program.
19         Cannot live in a home where there are any guns.
20         I'm going to require warrantless search and seizure
21   to ensure compliance with these conditions.
22         Cannot use alcohol, cannot frequent places where
23   alcoholic beverages are served primarily.
24         I'm going to require a $500 mandatory special
25   assessment.

U.S.A. v. Cox - 2/9/17

1    He has no ability to pay a fine.  I will waive the
2  fine in this case.

3    Look, I'm imposing the maximum sentence that I can
4  because of the nature of the threats in this case, his
5  admission to it, and his admission that he intended to carry
6  them out, and that if he gets out of prison, he will carry
7  them out in the future.  I don't really have any choice but to
8  impose ten years on each count to run consecutive.  I simply
9  have no choice to protect the public.

10    I hereby advise the defendant of his right to appeal
11  the sentence.  Notice of appeal must be filed within 14 days
12  of the entry of judgment or 14 days of a notice of appeal by
13  the government.  If requested, the clerk will prepare and file
14  a notice of appeal on behalf of the defendant.

15    I advise the defendant of his right of a person who
16  is unable to pay the cost of appeal to apply for leave to
17  appeal without prepayment of such costs.

18    I hope that you can get some counseling in the Bureau
19  of Prisons, Mr. Cox, so that what you're hearing in your
20  brain, you can get some professional counseling and treatment
21  that may try to minimize that.

22    But I hear what you've had to say, and I am imposing
23  this sentence under the 3553(a) factors, given your prior
24  criminal history, to protect the public, given your assurance
25  that if you get out, you would kill people.  I have no choice.

U.S.A. v. Cox - 2/9/17

1          Ask the marshal to declare a recess.

2      (Court recessed at 12:23 p.m.)

3

4                    CERTIFICATE

5  I,  Judy K. Webb, certify that the foregoing is a

6  correct transcript from the record of proceedings in

7  the above-entitled matter.

8

9  /s/  Judy K. Webb            Date:  3/29/2017

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25